**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GUY BRAVERMAN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTELLIPHARMACEUTICS INTERNATIONAL INC., ISA ODIDI, and DOMENIC DELLA PENNA,<br><br>Defendants. | **Case No.**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Guy Braverman ("Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his complaint against Defendants, alleges the following based upon personal knowledge as to himself and his own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding IntelliPharmaCeutics International Inc. ("IntelliPharma" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired IntelliPharma securities

between January 14, 2016 and July 26, 2017, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. IntelliPharma is a pharmaceutical company specializing in research, development, and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs.

3. The Company's main product candidate is Rexista, an abuse-deterrent oxycodone hydrochloride extended release tablets. Rexista is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.

4. Founded in 1998, the Company is headquartered in Toronto, Canada. IntelliPharma's stock trades on the NASDAQ stock market under the ticker symbol "IPCI."

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) IntelliPharma failed to conduct a human abuse liability study to support its Rexista New Drug Application ("NDA"); (ii) the Company did not include abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous routes of abuse; (iii) IntelliPharma was not submitting sufficient data to support approval of the Rexista NDA; and (iv) as a result of the foregoing, IntelliPharma's public statements were materially false and misleading at all relevant times.

6. On July 27, 2017, before the market opened, IntelliPharma issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing update on the U.S. Food FDA Advisory Committee Meeting for Rexista ("July 2017 Press Release"). The press release stated, in pertinent part:

**Intellipharmaceutics Provides Update on FDA Advisory Committees Meeting for Rexista™ (oxycodone hydrochloride extended release), an Abuse-Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain**

TORONTO, July XX, 2017 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:IPCI) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that ***the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the U.S. Food and Drug Administration ("FDA") voted 22 to 1 in finding that the Company's New Drug Application ("NDA") for Rexista™ abuse-deterrent oxycodone hydrochloride extended release tablets should not be approved at this time. The committees also voted 19 to 4 that the Company has not demonstrated that Rexista™ has properties that can be expected to deter abuse by the intravenous route of administration, and 23 to 0 that there are not sufficient data for Rexista™ to support inclusion of language regarding abuse-deterrent properties in the product label for the intravenous route of administration.***

***The committees expressed a desire to review the additional safety and efficacy data for RexistaTM that may be obtained from human abuse potential studies for the oral and intranasal routes of administration.*** Accordingly, the Company intends to conduct Category 3 abuse potential studies to provide the data the Company believes necessary to support abuse-deterrent properties of RexistaTM for the oral and intranasal routes, which are required for abuse-deterrent labeling claims for such routes. ***The Company has an FDA approved protocol for a human abuse potential study for the intranasal route of abuse, which it plans on commencing in the coming weeks.***

RexistaTM is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. The FDA is not bound by the advisory committees' recommendation, but will consider their guidance as it continues its review of RexistaTM. The FDA set a Prescription Drug User Fee Act (PDUFA) goal date of September 25, 2017 for completion of its review of our RexistaTM NDA candidate.

> The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, "While we are disappointed with the Committees' overall vote, we will endeavor to remedy the concerns raised by completing the necessary human abuse potential studies in relation to the intranasal and oral routes of abuse. We will continue to work with the FDA in progressing this file over the next few weeks as we approach the September 25, 2017 PDUFA date."
>
> There can be no assurance that we will not be required to conduct further studies for RexistaTM, that the FDA will approve any of the Company's requested abuse-deterrent label claims or that the FDA will ultimately approve the NDA for the sale of RexistaTM in the U.S. market, or that it will ever be successfully commercialized.

(Emphases added.)

7. In fact, the report issued by the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the FDA, which became available the same day ("July 2017 FDA Report"), itself stated in relevant part:

> ***"The safety information collected in the pharmacokinetic studies was of limited value due to the fact that these were generally single-dose studies*** (except one multiple dose study) conducted in healthy volunteers who were naltrexone-blocked. ***There were no human abuse liability studies submitted with the NDA. No new safety signals were identified during the review of the oxycodone ER tablets application beyond what is already known for oxycodone products."***

(Emphases added.)

8. On this news, IntelliPharma's share price fell $1.13, or 45.38%, to close at $1.36 on July 27, 2017.

9. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

10. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

11. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and Section 27 of the Exchange Act.

12. Venue is proper in this Judicial District pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b). IntelliPharma's shares trade on the NASDAQ, located within this Judicial District.

13. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

14. Plaintiff, as set forth in the attached Certification, acquired IntelliPharma securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

15. Defendant IntelliPharma is incorporated in Canada, with principal executive offices located at 30 Worcester Road, Toronto, ON M9Q 5X2, Canada. IntelliPharma's shares trade on the NASDAQ under the ticker symbol "IPCI."

16. Defendant Isa Odidi ("Odidi") co-founded and has served at all relevant times as the Company's Chief Executive Officer ("CEO") and Chief Scientific Officer.

17. Defendant Domenic Della Penna ("Penna") has served at all relevant times as the Company's Chief Financial Officer ("CFO").

18. The Defendants referenced above in ¶¶ 16-17 are sometimes referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19. IntelliPharma is a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs.

20. The Company's main product candidate is Rexista, an abuse-deterrent oxycodone hydrochloride extended release in tablet form. Rexista is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate.

### Materially False and Misleading Statements Issued During the Class Period

21. The Class Period begins on January 14, 2016, when IntelliPharma issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing the results of its pivotal bioequivalence trials of Rexista™ Oxycodone XR ("January 2016 Press Release"). The Company made material misrepresentations in the press release, including, in pertinent part:

> **Intellipharmaceutics Announces Successful Bioequivalence Results for Abuse Deterrent Rexista™ Oxycodone XR**
>
> TORONTO, January 14, 2016 (GLOBE NEWSWIRE) - Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:I) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that pivotal bioequivalence trials of the Company's Rexista™ Oxycodone XR (abuse deterrent oxycodone hydrochloride) extended release tablets, dosed under fasted and fed conditions, had demonstrated bioequivalence to Oxycontin® (oxycodone

hydrochloride) extended release tablets as manufactured and sold in the United States by Purdue Pharma LP. The study design was based on United States Food and Drug Administration ("FDA") recommendations and compared the lowest and highest strengths of exhibit batches of the Company's Rexista™ Oxycodone XR to the same strengths of Oxycontin®. The results show that the ratios of the pharmacokinetic metrics, Cmax, AUC0- t and AUC0-f for Rexista™ vs. Oxycontin®, are within the interval of 80% - 125% required by the FDA with a confidence level exceeding 90%. The Company had earlier announced, in March 2015, that topline data results of three definitive Phase I pharmacokinetic clinical trials (single dose fasting, single dose steady-state fasting, and single dose fed), conducted on pilot batches of the Company's Rexista™ Oxycodone XR, all met the FDA bioequivalence criteria when compared to the existing branded drug Oxycontin®.

***The Company had also earlier announced, in May 2015, that the FDA had provided the Company with notification regarding its Investigational New Drug Application ("IND") submission for Rexista™ Oxycodone XR. The notification from the FDA had stated that the Company would not be required to conduct Phase III studies if bioequivalence to Oxycontin® was demonstrated.***

Having now demonstrated such bioequivalence for its Rexista™ Oxycodone XR product to be marketed upon FDA approval, the Company intends to complete the regulatory filing requirements and file a New Drug Application ("NDA") for Rexista™ Oxycodone XR with the FDA within the next 6 months in accordance with the NDA 505(b)(2) regulatory pathway. There can be no assurance that the FDA will ultimately approve the NDA for the sale of Rexista™ Oxycodone XR in the U.S. market, or that it will ever be successfully commercialized.

***"We take great pride in being the first pharmaceutical company, to the best of our knowledge, to have demonstrated bioequivalence in both fasted and fed conditions to the brand reference drug Oxycontin®. This enables us to accelerate the development and commercialization of our abuse deterrent Rexista™ Oxycodone XR product candidate without the need for costly and time-consuming Phase III efficacy trials,"*** stated Dr. Isa Odidi, CEO and co-founder of Intellipharmaceutics. "We look forward to filing an NDA within the next six months, which we hope will lead to a positive contribution in addressing an unmet need in opioid abuse and addiction."

(Emphases added.)

22. On November 25, 2016, IntelliPharma issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing that it had filed an NDA with the FDA seeking authorization to market Rexista ("November 2016 Press Release"). The Company made material misrepresentations in the press release, including, in pertinent part:

**Intellipharmaceutics Submits New Drug Application for Rexista® (oxycodone hydrochloride extended release), an Abuse Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain**

TORONTO, November 25, 2016 (GLOBE NEWSWIRE) - - Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:I) ("Intellipharmaceutics' or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that it has filed a New Drug Application ("NDA") with the U.S. Food and Drug Administration ("FDA") seeking authorization to market its Rexista® abuse-deterrent oxycodone hydrochloride extended release tablets in the 10 mg, 15 mg, 20 mg, 30 mg, 40 mg, 60 mg and 80 mg strengths.

Rexista® is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. ***The submission is supported by pivotal pharmacokinetic studies that demonstrated that Rexista® is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). The submission also includes a comprehensive array of abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of drug by oral, intra-nasal and intravenous pathways, having reference to the FDA's "Abuse-Deterrent Opioids – Evaluation and Labelling" guidance published in April 2015.***

***The abuse-deterrent properties incorporated into Rexista® are designed to make the product unlikable and discourage or make it more difficult to manipulate for the purpose of abuse or misuse via common routes of administration including: ingestion following chewing, licking or crushing; insufflation; inhalation; or injection.*** If approved, Rexista® may be the only abuse-deterrent oxycodone product with properties that may provide early warning of drug abuse if the product is manipulated or abused. The Company previously announced the results of a food effect study which showed that Rexista® can be administered with or without a meal (i.e., no food effect), providing another point of differentiation from currently marketed oral oxycodone extended release products.

As previously announced the FDA, under the small business waiver provision of the Federal Food, Drug, and Cosmetics Act, granted the Company a waiver of the $1,187,100 application fee for Rexista®.

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, "The NDA submission of Rexista® represents a critical milestone and turning point for the Company. This is our first NDA submission and ***the first abusedeterrent oxycodone product candidate we are aware of that not only resists common forms of abuse but provides a preventive tool that may flag early warning of abuse.*** We are excited about the prospect of Rexista®, if approved, having a positive impact in addressing the opioid epidemic. ***We believe our suite of abuse-deterrent and***

> ***overdose prevention technologies are best in class and we look forward to further expanding our development program for abuse-deterrent pain and other medications.*** The Company has identified potential manufacturing partners and is currently evaluating various manufacturing options for Rexista® in the U.S. We look forward to working with the FDA during their review of our NDA submission."

(Emphases added.)

23. On February 2, 2017, IntelliPharma issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing that Rexista's NDA had been accepted by the FDA for substantial review ("February 2017 Press Release"). The press release stated, in pertinent part:

> **Intellipharmaceutics Announces FDA Acceptance for Filing of NDA for RexistaTM (oxycodone hydrochloride extended release), an Abuse Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain**
>
> TORONTO, February 2, 2017 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:I) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that the U.S. Food and Drug Administration ("FDA") has accepted for filing the Company's previously-announced New Drug Application ("NDA") seeking authorization to market its RexistaTM abusedeterrent oxycodone hydrochloride extended release tablets in the 10 mg, 15 mg, 20 mg, 30 mg, 40 mg, 60 mg and 80 mg strengths. The FDA has determined that the Company's application is sufficiently complete to permit a substantive review, and has set a target action date under the Prescription Drug User Fee Act ("PDUFA") of September 25, 2017.
>
> RexistaTM is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. ***The submission is supported by pivotal pharmacokinetic studies that demonstrated that RexistaTM is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). The submission also includes abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous, having reference to the FDA's "Abuse-Deterrent Opioids — Evaluation and Labelling" guidance published in April 2015.***
>
> ***The abuse-deterrent properties incorporated into RexistaTM are designed to make the product unlikable and discourage or make it more difficult to manipulate for the purpose of abuse or misuse via common routes of***

> ***administration including: ingestion following chewing, licking or crushing; insufflation; inhalation; or injection.*** If approved, RexistaTM may be the only abuse-deterrent oxycodone product with properties that may provide early warning of drug abuse if the product is manipulated or abused. The Company previously announced the results of a food effect study which showed that RexistaTM can be administered with or without a meal (i.e., no food effect), providing another point of differentiation from currently marketed oral oxycodone extended release products.
>
> The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, ***"The acceptance of filing of our NDA for RexistaTM represents an important step towards the commercialization of a potentially best–in-class abuse-deterrent oxycodone hydrochloride extended release product.*** We look forward to working with the FDA during their review of our NDA submission."
>
> There can be no assurance that we will not be required to conduct further studies for RexistaTM, that the FDA will ultimately approve the NDA for the sale of RexistaTM in the U.S. market, or that it will ever be successfully commercialized.
>
> (Emphases added.)

24. On February 28, 2017, filed an annual report on Form 20-F with the SEC announcing the Company's financial and operating results for the fiscal fourth quarter and fiscal year ended November 30, 2016 ("2016 20-F"), which was signed and certified under the Sarbanes Oxley Act of 2002 by the Individual Defendants. The 20-F stated, in pertinent part:

> **Recent Corporate Developments**
>
> * * *
>
> In February 2017, the FDA accepted for filing the NDA we filed in November 2016 seeking authorization to market our Rexista™ product candidate (abuse-deterrent oxycodone hydrochloride extended release tablets) in the 10, 15, 20, 30, 40, 60 and 80 mg strengths. The FDA has determined that our application is sufficiently complete to permit a substantive review, and has set a target action date under the Prescription Drug User Fee Act ("PDUFA") of September 25, 2017. Rexista™ is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. ***The submission is supported by pivotal pharmacokinetic studies that demonstrated that RexistaTM is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). The submission also includes abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-***

***nasal and intravenous, having reference to the FDA's "Abuse-Deterrent Opioids — Evaluation and Labeling" guidance published in April 2015.***

(Emphasis added.)

25. On June 30, 2017, IntelliPharma issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing a FDA Advisory Committee Meeting for Rexista ("June 2017 Press Release"). The press release stated, in pertinent part:

**Intellipharmaceutics Announces FDA Advisory Committee Meeting for Rexista™ (oxycodone hydrochloride extended release), an Abuse Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain**

TORONTO, June 30, 2017 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:IPCI) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that a joint meeting of the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the U.S. Food and Drug Administration ("FDA") has been scheduled for July 26, 2017 to review the Company's New Drug Application ("NDA") for RexistaTM abusedeterrent oxycodone hydrochloride extended release tablets.

The Company's NDA submission for RexistaTM was accepted for review by the FDA on February 2, 2017. The FDA set a target action date under the Prescription Drug User Fee Act ("PDUFA") of September 25, 2017. RexistaTM is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. The submission is supported by pivotal pharmacokinetic studies that demonstrated that RexistaTM is bioequivalent to OxyContin® (oxycodone hydrochloride extended release). The submission also includes abuse-deterrent studies conducted to support abuse-deterrent label claims, having reference to the FDA's "Abuse-Deterrent Opioids — Evaluation and Labeling" guidance published in April 2015.

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, "We are very pleased with the progress made towards our goal of securing FDA approval of our RexistaTM NDA candidate. We look forward to sharing our data and discussing Rexista™ with the members of the Advisory Committees, and in continuing to work closely with the FDA through the review process."

***The abuse-deterrent properties incorporated into RexistaTM are designed to make the product unlikable and discourage or make it more difficult to manipulate for the purpose of abuse or misuse. If approved, RexistaTM may be***

> ***the only abuse-deterrent oxycodone product with properties that may provide early warning of drug abuse if the product is manipulated or abused.*** The Company previously announced the results of a food effect study which showed that RexistaTM can be administered with or without a meal (i.e., no food effect), providing another point of differentiation from currently marketed oral oxycodone extended release products.
>
> There can be no assurance that we will not be required to conduct further studies for RexistaTM, that the FDA will ultimately approve the NDA for the sale of RexistaTM in the U.S. market, or that it will ever be successfully commercialized.
>
> (Emphasis added.)

26. The statements referenced in ¶¶ 21-25 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) IntelliPharma failed to conduct a human abuse liability study to support its Rexista NDA; (ii) the Company did not include abuse-deterrent studies conducted to support abuse-deterrent label claims related to abuse of the drug by various pathways, including oral, intra-nasal and intravenous routes of abuse; (iii) IntelliPharma was not submitting sufficient data to support approval of the Rexista NDA; and (iv) as a result of the foregoing, IntelliPharma's public statements were materially false and misleading at all relevant times.

## <u>The Truth Emerges</u>

27. On July 27, 2017, before the market opened, IntelliPharma issued a press release, also attached as exhibit 99.1 to the Form 8-K filed with the SEC announcing update on the FDA Advisory Committee Meeting for Rexista ("July 2017 Press Release"). The press release stated, in pertinent part:

> **Intellipharmaceutics Provides Update on FDA Advisory Committees Meeting for Rexista™ (oxycodone hydrochloride extended release), an Abuse-Deterrent Opioid Analgesic for the Treatment of Moderate to Severe Pain**

TORONTO, July XX, 2017 (GLOBE NEWSWIRE) -- Intellipharmaceutics International Inc. (Nasdaq:IPCI) (TSX:IPCI) ("Intellipharmaceutics" or the "Company"), a pharmaceutical company specializing in the research, development and manufacture of novel and generic controlled-release and targeted-release oral solid dosage drugs, today announced that ***the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the U.S. Food and Drug Administration ("FDA") voted 22 to 1 in finding that the Company's New Drug Application ("NDA") for Rexista™ abuse-deterrent oxycodone hydrochloride extended release tablets should not be approved at this time. The committees also voted 19 to 4 that the Company has not demonstrated that Rexista™ has properties that can be expected to deter abuse by the intravenous route of administration, and 23 to 0 that there are not sufficient data for Rexista™ to support inclusion of language regarding abuse-deterrent properties in the product label for the intravenous route of administration.***

***The committees expressed a desire to review the additional safety and efficacy data for RexistaTM that may be obtained from human abuse potential studies for the oral and intranasal routes of administration.*** Accordingly, the Company intends to conduct Category 3 abuse potential studies to provide the data the Company believes necessary to support abuse-deterrent properties of RexistaTM for the oral and intranasal routes, which are required for abuse-deterrent labeling claims for such routes. ***The Company has an FDA approved protocol for a human abuse potential study for the intranasal route of abuse, which it plans on commencing in the coming weeks.***

RexistaTM is indicated for the management of pain severe enough to require daily, around-the-clock, long-term opioid treatment and for which alternative treatment options are inadequate. The FDA is not bound by the advisory committees' recommendation, but will consider their guidance as it continues its review of RexistaTM. The FDA set a Prescription Drug User Fee Act (PDUFA) goal date of September 25, 2017 for completion of its review of our RexistaTM NDA candidate.

The CEO of Intellipharmaceutics, Dr. Isa Odidi, said, "While we are disappointed with the Committees' overall vote, we will endeavor to remedy the concerns raised by completing the necessary human abuse potential studies in relation to the intranasal and oral routes of abuse. We will continue to work with the FDA in progressing this file over the next few weeks as we approach the September 25, 2017 PDUFA date."

There can be no assurance that we will not be required to conduct further studies for RexistaTM, that the FDA will approve any of the Company's requested abuse-deterrent label claims or that the FDA will ultimately approve the NDA for the sale of RexistaTM in the U.S. market, or that it will ever be successfully commercialized.

(Emphases added.)

28. In fact, the report issued by the Anesthetic and Analgesic Drug Products Advisory Committee and Drug Safety and Risk Management Advisory Committee of the FDA which became available the same day ("July 2017 FDA Report"), itself stated, in relevant part:

> ***"The safety information collected in the pharmacokinetic studies was of limited value due to the fact that these were generally single-dose studies*** (except one multiple dose study) conducted in healthy volunteers who were naltrexone-blocked. ***There were no human abuse liability studies submitted with the NDA. No new safety signals were identified during the review of the oxycodone ER tablets application beyond what is already known for oxycodone products."***

(Emphasis added.)

29. On this news, IntelliPharma's share price fell $1.13, or 45.38%, to close at $1.36 on July 27, 2017.

30. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired IntelliPharma securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

32. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, IntelliPharma securities were actively traded on the

NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by IntelliPharma or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

33. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

34. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

35. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of IntelliPharma;
- whether the Individual Defendants caused IntelliPharma to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of IntelliPharma securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

36. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

37. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- IntelliPharma securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NASDAQ and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold IntelliPharma securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

38. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

39. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State*

*of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

42. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of IntelliPharma securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire IntelliPharma securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

43. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for IntelliPharma securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about IntelliPharma's finances and business prospects.

44. By virtue of their positions at IntelliPharma , Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

45. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of IntelliPharma, the Individual Defendants had knowledge of the details of IntelliPharma's internal affairs.

46. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of

IntelliPharma. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to IntelliPharma's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of IntelliPharma securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning IntelliPharma's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired IntelliPharma securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

47. During the Class Period, IntelliPharma securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of IntelliPharma securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of IntelliPharma securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of IntelliPharma securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

48. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

49. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

50. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

51. During the Class Period, the Individual Defendants participated in the operation and management of IntelliPharma, and conducted and participated, directly and indirectly, in the conduct of IntelliPharma's business affairs. Because of their senior positions, they knew the adverse non-public information about IntelliPharma's misstatement of income and expenses and false financial statements.

52. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to IntelliPharma's financial condition and results of operations, and to correct promptly any public statements issued by IntelliPharma which had become materially false or misleading.

53. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which IntelliPharma disseminated in the marketplace during the Class Period concerning IntelliPharma's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause IntelliPharma to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of IntelliPharma within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of IntelliPharma securities.

54. Each of the Individual Defendants, therefore, acted as a controlling person of IntelliPharma. By reason of their senior management positions and/or being directors of IntelliPharma, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, IntelliPharma to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of IntelliPharma and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

55. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by IntelliPharma.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: August 10, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com

**BRONSTEIN, GEWIRTZ & GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600
New York, NY 10165
(212) 697-6484
peretz@bgandg.com

***Attorneys for Plaintiff***

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1. I, Guy Braverman, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against IntelliPharmaCeutics International Inc. ("IntelliPharma " or the "Company") and, authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire IntelliPharma securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or acquired IntelliPharma securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in IntelliPharma securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed 10/8/17
(Date)

(Signature)

Guy Braverman
(Type or Print Name)

**INTELLIPHARMACEUTICS INTERNATIONAL INC. (IPCI)** **Braverman, Guy**

**LIST OF PURCHASES AND SALES**

| DATE | PURCHASE OR SALE | NUMBER OF SHARES/UNITS | PRICE PER SHARES/UNITS |
|---|---|---|---|
| 10/21/2016 | Purchase | 7,000 | $3.0945 |
| 10/21/2016 | Purchase | 4,000 | $3.1053 |
| 10/21/2016 | Purchase | 5,000 | $3.1399 |
| 10/21/2016 | Purchase | 1,000 | $3.0700 |